May it please the Court, Jane Ann Murray for Mr. Hill. The question in this case is upon what basis and for how long may the government track an individual's cell phone, even a suspected drug dealer? In this case, two warrants were issued. We're challenging the success of one, the second one. One was for 10 days. The basis for seeking that warrant was to find out where this individual stayed. The individual, there was probable cause to believe this individual was engaging in drug dealing, had engaged in a sale. But even assuming that the second, that the warrant was excessive, were those who complied with it acting in good faith and therefore any searches that developed from it would not be excluded? Because you're not arguing the question however, I mean you're arguing that, but the only issue before you in the case was what was found should have been excluded. And I don't see how the good faith exception doesn't apply directly. Even assuming that this was the fruit of a poisonous tree and wasn't too attenuated and the tree wasn't poisonous. But the warrant seems good. Well, your honor, my arguments with respect to good faith are that no reasonable officer could have understood that this warrant had sufficient probable cause to permit the level of invasive tracking that cell phone monitoring involves. You're asking an awful lot of officers' knowledge of sophisticated law. I mean, one of your first arguments is that this was unduly distant, and that's a sophisticated argument that we may or may not buy. But you're asking the ordinary officer cop on the street to look at that and come out with the way we might perhaps come out. Well, your honor, there was, there is an odd component of this warrant in that they do not state in the warrant for the cell phone tracking that they already got a warrant to track the car, which would have achieved exactly what they wanted with a less invasive prospect. So, but the other aspect that I raise in good faith here, which came through the trial, that apparently these officers had violated the warrant that permitted them to put a tracking device on the car. They had attached it to the car at a time that was outside the warrant period involved. This, I think, while it's a different warrant, it's the warrant for tracking the car rather than the warrant for tracking the cell phone, indicates. But what's the significance of that? I mean, obviously, you're not challenging something that was recovered as a result of the car tracking. Correct. I don't know if that's just atmospheric or what's the significance of that? The significance of that is that these officers had absolutely no difficulty violating a direct order from a magistrate. The fact that they violated one direct order, is that sufficient to say that they didn't act in good faith in this? Do you have any case that tells us that officers who did something wrong do not have the benefit of the good faith exception? And I think that might be a very good situation, but do you have any case that does that? Your Honor, I have not presented a case to the court on that matter, but I think it raises a question about the honesty and the integrity of these individual officers. If officers are going to seek a reliance on a good of the good faith exception to the warrant requirement, one would anticipate that these officers comply with warrants generally. In this very case, we had a non-compliance with a warrant. One would think that then in good faith cases, one would bring in the history of the particular officers who did that in other cases. And in 30 years, I've not seen a single case where in a good faith thing, we've gone and looked at the history of a particular officer. Well, Your Honor, in analyzing the officer's good faith reliance on a warrant, the issue would, in a suppression hearing, would also be the issue of the credibility of that particular officer. Here, the issue of this officer violating the tracking warrant only came out at trial. And so this was something that could have been raised in a good faith argument with respect to the warrant on the cell phone tracking. I understand, Your Honor, that the good faith exception is a higher mountain for me to climb here. But nonetheless, I would submit that officers today are aware of the breadth of information that they can obtain from a cell phone warrant, the intrusiveness of cell phone tracking generally. This is something that's been a major issue in the Supreme Court. And so I submit that even an average officer should question the validity of having that level of intrusion into the life of the suspect they are tracking. And especially when the argument being made to the court is, I need to know where he when, in fact, they already at this point knew where he stayed. I submit that this raised questions about the ability to raise good faith reliance on that warrant. Your Honors, I will just briefly also address the issue of Mr. Hill being forced to proceed to trial on his own despite his desperate request for a fourth counsel. I do appreciate this was his request for a fourth lawyer. The first lawyer he didn't have for terribly long and hired somebody. And then he moved to have a second lawyer after that. And this was going to be his request for a second court-appointed lawyer in the process after he had hired somebody. The issue here is that everything seemed to be a decision between the court's convenience rather than the needs of the client. And, of course, the issue of a knowing involuntary waiver is a critical one for this court in terms of determining whether the Faretto case procured. And we had an issue where this particular individual was moving for a mental health evaluation. Mr. Hill has asked me to raise this issue with Your Honors today. This was the issue that he raised in his pro se appeal that he wanted to have a mental health evaluation. That mental health evaluation be relevant, he said, to a diminished capacity defense, which I'm not going to address. But it is relevant to his ability to competently represent himself. And this Court's case law does require that even if somebody in the United States be stopped, that even somebody who is competent to stand trial may nonetheless not be competent to represent themselves if they suffer from a severe mental illness to the point that they are not to conduct trial proceedings by themselves. Here he had claimed PTSD. He had talked about God being his lawyer. There were enough indicia here to suggest potential severe mental illness. But, therefore, a mental health evaluation would have been appropriate before putting him in the position of representing himself. Thank you very much. Thank you, Your Honors. Good morning, and may it please the Court. I am Assistant United States Attorney Zachary Stendig on behalf of the United States of America. At the outset, the second tracking warrant in this case was supported by ample probable cause, and law enforcement took great pains to comply with the Fourth Amendment. They obtained a search warrant to track the location of Mr. Hill's device. They set forth all of their investigation to date in their affidavit, including a controlled purchase of drugs, as well as after the initial 10-day period lapse of tracking, what they had found during that period. And what's your response to the idea that the purpose, if the stated warrant is to determine his location, the idea that that was already known at the time of the renewal? My response to that is, Judge, that they figured out that the defendant slept in Plattsburgh, New York, so across Lake Champlain from Burlington, Vermont. But as they indicated in the warrant application and the appendix on page 84, they wrote, it is the intent of law enforcement to identify where he is currently staying in the Burlington area. So from the original 10-day period, law enforcement was able to determine that Mr. Hill was traveling from Plattsburgh to Burlington, where he was spending time in the downtown corridor there. They did surveillance, and they observed the same vehicle with the Georgia license plate that was registered to Mr. Hill in the vicinity of where the phone geolocation information suggested that it was. And they wanted to determine where in Burlington he was going. After all, it is Vermont Burlington police who are conducting this investigation and who believe that he's selling drugs in Burlington based on the fact that a controlled purchase happened in Burlington just days prior, as well as their observations that following the controlled purchase, Mr. Hill went to a location south of the controlled purchase in Burlington and had short-duration meetings with individuals while he was in his car, which was a hallmark of drug trafficking. So all of that, which was put into this warrant seeking an extension of the cell phone location information, it provides ample probable cause to track the device. And I think it's important to note, to judge, that this particular device that law enforcement sought to track was the very same device that the confidential informant in this case used to contact Mr. Hill to set up the drug transaction that was conducted on behalf of law enforcement. Even if the search warrant was not supported by probable cause, which, as I mentioned, I submit that it is, there is the good faith exception. This application, this warrant is not so lacking in indicia of probable cause that would be unreasonable for a member of law enforcement to rely on it. And I think that's why the district court correctly concluded that suppression was not appropriate in this case. Can you address the argument that if officers are themselves flawed, the good faith exception shouldn't apply? Because it seems to me that if you've made an argument that this is a close case, or at least your way, on this being a valid warrant, then it's very hard to say that an ordinary officer would know that it was not, and therefore the good faith exception doesn't apply, unless we buy the defendant's argument that it shouldn't apply because these officers were flawed. Well, I don't think there's any indicia in this case that the officers were flawed. With regard to the tracking warrant, Detective Beal testified extensively about this on direct and cross-examination during trial. I point the Court to Joint Appendix pages 363 to 366, where he's cross-examined by the defendant about this tracking warrant. And to sort of give you a factual background, the officer testified that he realized that he put the tracker on Mr. Hill's vehicle at a period of time outside of which was authorized by the warrant to track the vehicle. So he goes and then takes it off. He testified that he did not use any of the information that was obtained from the tracker, and they removed it entirely from the case file. So there was nothing to actually suppress because the government didn't seek to use any of it. And I submit that Detective Beal was candid about this mistake that he made at his direct and cross-examination. And again, I think what's so important here is that law enforcement realized they made a mistake, and they took the steps to rectify it. And if you'll recall from the trial record, the vehicle that they were tracking was at this Doubletree Hotel in South Burlington, or that they were not authorized to track. And when law enforcement went to go take the tracker off, Mr. Hill actually found Detective Beal right next to his car. And so Detective Beal had to think quickly on his feet and make up an excuse about dropping his keys. But this was, it almost jeopardized the entire investigation. But law enforcement did the right here as they did throughout this case where they sought search warrants. When they realized that they should not have been tracking this vehicle, they took the tracker off, they purged the information from their case file, and none of that information that would not have been lawfully obtained was sought to be used against the defendant at trial. I think it's important to note that in this case, the defendant also had a fair trial. Obviously, he represented himself, but that was after the Court conducted not one but two Faretta colloquies in this case. The defendant, during the course of his dependency of this case, was represented by three capable attorneys. At one point in August of 2022, he represented himself, which is when he had, when he was subject to the first Faretta colloquy with the Court. And he had another colloquy about a year later in August of 2023. And he affirmed to the Court that he understood the limitations of representing himself. The Court tried to persuade him not to do that, to go forward with Mr. Henry, and he decided not to do that. And this is the case of an intractable defendant, just like in Culbertson, just like in Schmidt, and just like in these other cases, including Simpson, where it was a defendant who thought he would have an unfettered of trial counsel, and the Court properly concluded that he was not entitled to a fourth attorney. So, to sum up, unless there's any additional questions, the District Court committed no error in this case. The search warrant was supported by probable cause. The defendant received a fair trial, and this Court should affirm his conviction. Thank you.  Your Honors, just briefly, to be clear, the first warrant was designed to find out where he was staying, and it was determined where he was staying. It's a very odd warrant that then says we still want to find out where he's staying. At that point, the determination was he was staying in Burlington and traveling to Plattsburgh during the day where the drug deals were going down. So, the need for an additional warrant is not clear on the face of that warrant, and the question then becomes the probable cause to potentially invade private spaces, protected spaces. With regard to the officers acting lawfully and appropriately in this case, they attached a tracker to a car outside of time. That's not lawful or appropriate, and this raises questions about generally the credibility and good faith of these officers and whether they should then get the good faith exception with respect to a separate parallel warrant. And finally, with respect to whether this individual got a fair trial, there were several flaws in the case which are laid out in my papers. Potentially two felons sat on the jury. The defendant really didn't understand the gravity of the situation and what he could do to exclude those individuals. The entirety of his record was read to the jury, which would never have happened if there had been competent counsel present. There were references to heroin and cocaine. What you're talking about does go to the sort of accepted principle, at least I accept it, that you're better off having an attorney at your criminal trial than representing yourself, but I don't know that that goes to a flaw in his ability to be entitled to do this. I mean, that is what happens when individuals represent themselves. If you don't have legal training, they don't realize, well, you know, in some sense, this was a fair trial. And they're not making any mistakes. It's not that, you know, the judge is doing something wrong or what have you, that you, the representative, and in this case, the individual, is making mistakes. And so perhaps he's not getting a fair trial, but that's not — that doesn't go to a legal right of his. It's — he's not getting a fair trial, Your Honor, as I see you saying, because he put himself in this situation and it was his own conscious decision to decide to proceed on his own rather than with competent counsel. That would be the answer, Your Honor, that the government would make and that this court could decide if, I submit, there had been a mental health evaluation to confirm that he was mentally competent to represent himself at this trial. Thank you very much. Thank you both. We'll take this case under advisement.